UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH OZORMOOR,

    Plaintiff,

v.                                                        Case No. 08-11717

T-MOBILE USA, INC.,                      HONORABLE AVERN COHN

    Defendant.

_____/

**MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS[1]**

I. Introduction

This is a contract case. Plaintiff Joseph Ozormoor (Ozormoor), an attorney proceeding *pro se*, is suing his former wireless service provider, Defendant T-Mobile USA, Inc. (T-Mobile), claiming 1) Bad Faith Breach of Contract; 2) Violation of Michigan Consumer Protection Act; 3) Intentional Infliction of Emotional Distress; and 4) Defamation.

Before the Court is T-Mobile's Motion to Compel Arbitration and Stay Proceedings. T-Mobile says that the arbitration provision in the parties' agreement is valid and asks that it be enforced. Ozormoor says that the arbitration provision is unconscionable and unenforceable under Michigan contract law. The Court agrees with T-Mobile that Ozormoor's claims are subject to arbitration. However, the cost-splitting

---

[1]Ordinarily, this matter would be scheduled for hearing. Upon review of the parties' papers, however, the Court finds that oral argument is not necessary. See E.D. Mich. LR 7.1(e)(2).

provision, requiring Ozormoor to pay half of all administrative expenses, is unenforceable and severed. Accordingly, T-Mobile's motion will be granted in part and denied in part. The reasons follow:

## II. Background

In November of 2003, Ozormoor entered into a one-year Service Agreement (2003 Agreement) with T-Mobile for wireless phone services and purchased a wireless phone.[2] The second page of the 2003 Agreement contained "T-Mobile Terms and Conditions" (2003 Terms). Paragraph 3 of the 2003 Terms is titled "Mandatory Arbitration; Dispute Resolution" (2003 Arbitration Clause). The 2003 Arbitration Clause states, in pertinent part:

> ANY CLAIM OR DISPUTE BETWEEN YOU AND US ARISING UNDER OR IN ANY WAY RELATING TO OR CONCERNING THE AGREEMENT, AND/OR OUR PROVISION TO YOU OF GOODS, SERVICE, OR UNITS SHALL BE SUBMITTED TO FINAL, BINDING ARBITRATION WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") PURSUANT TO ITS PUBLISHED WIRELESS INDUSTRY ARBITRATION RULES, INCORPORATED HEREIN BY THIS REFERENCE AND AVAILABLE BY CALLING THE AAA AT 800-778-7879 OR VISITING ITS WEBSITE AT http://www.adr.org.

In March of 2005, Ozormoor renewed his contract and purchased a second phone.[3] The second page of this agreement (2005 Agreement) included a Customer

---

[2] The phone was a Motorola T722i. T-Mobile was offering a $125 rebate to customers who purchased the phone. Ozormoor says he never received the rebate.

[3] Ozormoor says he purchased the second phone based on T-Mobile's assurances that Ozormoor would receive the $125 rebate for the original phone, the $50 rebate for the second phone, and a $20 credit for renewal of the contract.

Acceptance section and contained the following paragraphs, which incorporated the terms and conditions (2005 Terms) by reference:

> THIS IS MY CONTRACT WITH T-MOBILE USA, INC. FOR WIRELESS SERVICES. MY CONTRACT IS CALLED A "SERVICE AGREEMENT" AND IT INCLUDES THIS DOCUMENT, THE SEPARATE T-MOBILE TERMS AND CONDITIONS, AND MY RATE PLAN INFORMATION. THE T-MOBILE TERMS AND CONDITIONS ARE IN MY WELCOME GUIDE OR WERE OTHERWISE PROVIDED TO ME AT THE TIME OF SALE. MY RATE PLAN INFORMATION WAS PROVIDED TO ME AT THE TIME OF SALE. BY SIGNING, I ACKNOWLEDGE THAT I HAVE RECEIVED AND READ THIS DOCUMENT, THE T-MOBILE TERMS AND CONDITIONS, AND MY RATE PLAN INFORMATION.
>
> I UNDERSTAND THAT THE SERVICE AGREEMENT AFFECTS MY AND T-MOBILE'S LEGAL RIGHTS. AMONG OTHER THINGS, IT…REQUIRES MANDATORY ARBITRATION OF DISPUTES…

The 2005 Terms also included a mandatory arbitration provision as follows:

> . . . YOU WILL FIRST NEGOTIATE IN GOOD FAITH TO SETTLE ANY CLAIM OR DISPUTE BETWEEN YOU AND US IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OR OUR PROVISION TO YOU OF GOODS, SERVICES, OR UNITS ("CLAIM"). . . . IF YOU DO NOT REACH AGREEMENT WITH US WITHIN 30 DAYS, INSTEAD OF SUING IN COURT, YOU AGREE THAT ANY CLAIM MUST BE SUBMITTED FOR FINAL, BINDING ARBITRATION WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") UNDER ITS PUBLISHED WIRELESS INDUSTRY ARBITRATION RULES, WHICH ARE PART OF THE AGREEMENT BY THIS REFERENCE AND ARE AVAILABLE BY CALLING THE AAA AT 800-778-7879 OR VISITING ITS WEBSITE . . .

After several disagreements with T-Mobile,[4] Ozormoor terminated his contract with T-Mobile in December of 2005. T-Mobile then sent a bill to Ozormoor, which

---

[4] Ozormoor says that he received neither the rebates nor the $20 credit. Ozormoor also says that service was inoperable at the family home, even after numerous attempts were made by both the phone manufacturer and T-Mobile to fix the problem. Ozormoor also says that T-Mobile failed to provide notice of a change in roaming and long distance service, subsequently charging Ozormoor for overages.

included service fees and early termination fees. Ozormoor refused to pay and T-Mobile initiated collection proceedings. In response, Ozormoor initiated this lawsuit against T-Mobile.

III.  Analysis

A.

Michigan law and public policy support arbitration. The Michigan Arbitration Act (MAA), M.C.L. § 600.5001, shows "Michigan's strong public policy favoring arbitration." Veal v. Orkin Exterminating Company, Inc., 2001 U.S. Dist. LEXIS 4846 (2001) (quoting Watts v. Polaczyk, 242 Mich. App. 600 (2000)). Under Michigan law, parties who sign a contract are presumed to have knowledge of the contents of the contract. Id. at *5. Therefore, a plaintiff can not "avoid the agreement [to arbitrate] because of her own negligence in signing a document without learning of its contents." Horn v. Cooke, 118 Mich. App. 740 (1982).

Under Michigan law, the arbitrability of an issue arising under a contract is ascertained through a three-step inquiry: (1) is there an arbitration provision in the parties' contract; (2) is the disputed issue "on its face" or "arguably" within the contract's arbitration clause; and (3) is the disputed issue expressly exempt from arbitration by the terms of the contract. If an arbitration clause pertains to the disputed issue and the issue is within the scope of the clause, then it is arbitrable. Federal Kemper Ins. Co. v. American Bankers Ins. Co. (1984) 137 Mich. App 134 (1984).

Although Ozormoor has asserted state law claims, federal law still has some application. Federal law and policy also supports arbitration. The Federal Arbitration

4

Act (FAA) embodies the "liberal federal policy of favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The FAA also governs actions in federal court arising out of contracts involving interstate commerce, such as the wireless phone services at issue here. See 9 U.S.C. § 2. Thus, "arbitration should not be denied unless it may be said with positive assurance that the clause does not cover the dispute." Georgia Power Co. v. Cimarron Coal Corp., 526 F.2d 101 (6th Cir. 1975) (internal quotation marks and citation omitted). It is well settled, however, that "when the language is ambiguous or unclear, any doubts concerning the scope of arbitrability should be resolved in favor of arbitration." McGinnis v. E.F. Hutton & Co., 812 F.2d 1011, 1013 (6th Cir. 1987) (citing Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25).

It is also clear that federal law allows for arbitration of disputes concerning wireless service agreements. The Eleventh Circuit has held that a Plaintiff can not "claim the contract was not formed to avoid arbitration and concurrently sue for breach of that contract." See Rampersad v. Primeco Personal Communications, L.P., 2001 U.S. Dist. LEXIS 26037 (2001)). The Seventh Circuit has held that the plaintiff, who had an opportunity to reject or accept terms and conditions after purchase and subsequently used the wireless service without rejection, indicated acceptance of the terms and conditions including arbitration agreements. That court also found that the arbitration provision was enforceable since it was binding on both parties. See Schafer v. AT & T Wireless Services, Inc., 2005 U.S. Dist. LEXIS 43930 (2005)). Further, as noted in T-

5

Mobile's brief, at least one court have upheld T-Mobile's arbitration provision at issue here. See Hecht v. T-Mobile, USA, Inc., No. CL 03-6006 (Fla. Cir. Ct. Nov. 10, 2004) (unpublished).

B.

Ozormoor argues that the arbitration provisions contained in the Agreements are unconscionable and unenforceable under Michigan contract law. Ozormoor cites several reasons; each is addressed in turn.

First, he says that he is not bound by the arbitration provisions contained in the Agreements because he did not make any affirmative indication that he agreed to their terms. This argument lacks merit. Ozormoor received a copy of both Agreements containing the arbitration provisions, and his continued use of his wireless phone constituted acceptance of the terms of the Agreement. Moreover, Ozormoor has already admitted in his complaint that he entered into the 2003 and 2005 Agreements with T-Mobile.[5] A party is bound by the statements he makes in prior pleadings. Angott v. Chubb Group of Ins., 270 Mich. App. 465 (2006).

Ozormoor's reliance on Manasher v. NECC Telecom, 2007 WL 2713845 (E.D. Mich. Sept. 18, 2007) is misplaced. In Manasher, the court evaluated a telephone service's invoice that informed the reader where he could go to get a copy of the company's Disclosures and Liabilities Agreement. The invoice did not state that the Disclosures and Liabilities Agreement applied between the parties, that it formed part of the agreement between the parties, or that it was intended to be incorporated into the

---

[5] See Paragraph 36 of Ozormoor's initial complaint, referencing Canadian service charges.

parties' agreement. As such, the court concluded that the invoice did not sufficiently incorporate that agreement.

Here, however, the undisputed facts do not resemble those in Manasher. T-Mobile's terms, containing the arbitration provisions, are expressly and unambiguously incorporated on the second page of the 2003 Agreement and expressly referenced in the 2005 Agreement. Ozormoor agreed to T-Mobile's terms and the contained arbitration provisions by first activating his phone and then continuing to use T-Mobile's wireless service for more than 14 days after activation.[6]

Second, Ozormoor says the arbitration provisions are unenforceable because they unilaterally require Plaintiff to arbitrate his claims against T-Mobile with no reciprocal obligation on T-Mobile. This argument lacks merit. T-Mobile is also bound to arbitrate its claims.

Ozormoor further argues that the arbitration provisions are unconscionable because they waive his right to a jury trial and his right to participate as plaintiff or class member in a class action suit, and because they limit the power of an arbitrator to award damages to the extent allowable under state law. To support this argument, Ozormoor relies on several cases: Shroyer v. New Cingular Wireless, 498 F.3d 976 (9th Cir. 2007); Circuit City Stores, Inc. v. Adams, 279 F.3d 889 (9th Cir. 2002); and Allen v. Michigan Bell Tel. Co., 18 Mich. App. 632 (1969). None of those cases are applicable.

---

[6] Paragraph 6 of the 2005 Terms, and Paragraph 18 of the 2003 Terms, contains T-Mobile's return policy allowing a customer to return his phone within 14 days of activation without incurring cancellation charges.

In Shroyer, the court found that the class action waiver within the arbitration agreement located in the wireless service contract would not be enforceable to preclude the plaintiff's class action lawsuit. A class action is not involved here.

In Circuit City Stores, Inc., the court found that the arbitration agreement contained in a job application was procedurally unconscionable because it was a contract of adhesion. In support, the court stated that few job applicants would refuse a job due to a requirement they arbitrate disagreements with their employer. Id. at 893 (quoting Armendariz v. Foundation Health Psychcare Svcs., Inc., 6 P.3d 669, 690 (Cal. 2000). Here, Ozormoor is not an employee in need of a paying job. Rather, he is a consumer purchasing wireless services, and there are several wireless service providers for him to choose from.

In Allen, the court found that the limitation-of-liability clause in the agreement covering advertising services was unconscionable because Michigan Bell Telephone Company was the only company distributing a directory of classified telephone listings in the area and therefore the customer had no other option for that type of advertising. Again, T-Mobile was not the only wireless service provider in the area, and Ozormoor was free to choose from several other providers.

Third, Ozormoor argues that the arbitration provisions are not enforceable due to their cost-splitting requirements. Under the 2003 Terms,[7] if a complaint goes to arbitration, the following cost provisions apply:

> All administrative expenses of an arbitration will be equally divided between you and [u]s, except if the claim is less than $1000, you will be obligated to

---

[7] The 2005 Terms contain the same cost-splitting requirements.

pay only $25. If the claim is less than $25, [w]e will pay all administrative expenses. Each party agrees to pay the fees and costs of its own counsel, experts, and witnesses at the arbitration.

As to whether the cost-splitting requirements are unenforceable, the issue is one of a traditional contract defense, which in this case is unconscionability. Michigan law provides a two-pronged test governing the determination of whether a contract qualifies as unconscionable: (1) What is the relative bargaining power of the parties, their relative economic strengths, the alternative sources of supply, in a word, what are their options; and (2) is the challenged term substantively reasonable. Hubscher & Son, Inc. v. Storey, 228 Mich. App. 478 (1998) (internal quotation omitted). "Reasonableness is the primary consideration." Id. As one court has explained:

> In order for a contract or contract provision to be considered unconscionable, both procedural and substantive unconscionability must be present. Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the term. If, under a fair appraisal of the circumstances, the weaker party was free to accept or reject the term, there was no procedural unconscionability. Substantive unconscionability exists where the challenged term is not substantively reasonable. However, a contract or contract provision is not invariably substantively unconscionable simply because it is foolish for one party and very advantageous to the other. Instead, a term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience.

Clark v. DaimlerChrysler Corp., 268 Mich. App 138, 143-44 (2005) (citations omitted).

Here, the cost-splitting requirements are procedurally unreasonable because there is no reasonable alternative. Ozormoor was forced to accept it as part of the entire arbitration provision contained within the Service Agreement. The cost-splitting requirements are substantively unreasonable because imposing fees would deter Ozormoor and other similarly situated potential litigants from pursuing their claims.

9

Having determined that the cost-splitting requirements are unenforceable, the question is whether they can be severed from the arbitration provisions. In Professional Rehabilitation Assoc. v. State Farm Mut. Automobile Ins. Co., 228 Mich. App. 167, 174 (1998), the court noted that even if a portion of a contract is invalid, the defect does not void the valid provisions if they are severable, stating that "[t]he primary consideration in determining whether a contractual provision is severable is the intent of the parties."

Here, the 2003 Terms[8] contains language regarding severability; Paragraph 21 of the 2003 Terms is titled "Severability" (2003 Severability Clause) and states:

> If any provision of these Terms and Conditions is held to be inapplicable or unenforceable in your state, including any limitations in section 3, 14 or 15, then such provision shall be construed, as nearly as possible, to reflect the intentions of the parties with the other provisions remaining in full force and effect, and the balance of the provisions shall remain unaffected and in full force and effect, unless our obligations hereunder are materially impaired, in which even [w]e reserve the right to terminate the Agreement.

Based on this language evidencing intent and in light of the policy in favor of arbitration, the Court is satisfied that the cost-splitting requirements can be severed from the rest of the arbitration provisions.

Overall, the Court finds that the arbitration provisions are enforceable under state and federal law with the exception of the cost-splitting requirements. Ozormoor received at least one physical copy of the Agreement containing the arbitration provisions; he exhibited his acceptance of the both Agreements through the activation and continued use of the wireless service, and admitted his acceptance of the Agreements in prior pleadings. Arbitration is favored by

---

[8] The 2005 Terms contain the same "Severability" section in Paragraph 24.

both federal and state public policies and Ozormoor's claims clearly fall within the scope of the arbitration provisions.

The cost-splitting requirements, however, requiring a customer to pay half of the administrative fees in arbitration, in addition to his own legal expenses, will deter a substantial number of potential litigants from proceeding to arbitration and are therefore not enforceable.

## IV.  Conclusion

For the reasons stated above, T-Mobile's Motion to Compel Arbitration is GRANTED IN PART AND DENIED IN PART.  Ozormoor's claims are subject to arbitration; however, the cost-splitting provisions are severed and not enforceable.  All proceedings are STAYED pending arbitration.  See 9 U.S.C. § 3.

SO ORDERED.

     s/Avern Cohn
     AVERN COHN
     UNITED STATES DISTRICT JUDGE

Dated:  June 19, 2008

I hereby certify that a copy of the foregoing document was mailed to Joseph Ozormoor, 469 La Belle Road, Grosse Pointe Farms, MI 48236 the attorneys of record on this date, June 19, 2008, by electronic and/or ordinary mail.

     s/Julie Owens
     Case Manager, (313) 234-5160