UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH OZORMOOR,

    Plaintiff,

v.                                          Case No. 08-11717

T-MOBILE USA, INC.,               HONORABLE AVERN COHN

    Defendant.

_____/

## **MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION TO VACATE ARBITRATION AWARD**

I. Introduction

This is a contract dispute. Plaintiff Joseph sued his former wireless provider, defendant T-Mobile USA (T-Mobile) claiming (1) bad faith breach of contract, (2) violation of the Michigan Consumer Protection Act, (3) intentional infliction of emotional distress, and (4) defamation. As will be explained, Ozormoor eventually presented his claims to an arbitrator and before whom T-Mobile filed a motion for summary disposition. The arbitrator issued a decision granting T-Mobile's motion and dismissing Ozormoor's claims for failure to comply with the one-year statute of limitations in the service agreement.

Before the Court is Ozormoor's motion to vacate the arbitration award. For the reasons that follow, the motion will be denied.

II. Background

In November of 2003, Ozormoor purchased a cell phone from and entered into a one-year Service Agreement with T-Mobile for wireless phone services. In March of 2005, Ozormoor added a second line to his account and renewed his contract for an additional year, entering another Service Agreement. Both Service Agreements contain arbitration provisions.

After several disagreements with T-Mobile, including complaints of poor service and reception, improper charges, and a failure to receive certain rebates, Ozormoor cancelled his contract with T-Mobile in December of 2005. T-Mobile then sent a bill to Ozormoor, which included service fees and early termination fees. Ozormoor refused to pay. T-Mobile initiated collection proceedings.

On March 21, 2008, Ozormoor sued T-Mobile in state court asserting the claims set forth above. T-Mobile removed the case to federal court based on diversity. T-Mobile then moved to compel arbitration and stay the case. The Court granted the motion in part, finding all of Ozormoor's claims subject to arbitration. The Court also found the cost-splitting provision unenforceable and severed it from the Service Agreement. See Memorandum and Order, filed June 19, 2008 (Doc. No. 9). By October of 2008, because Ozormoor had not initiated arbitration proceedings, T-Mobile filed a motion to dismiss the complaint. On November 13, 2008, Ozormoor filed a motion for reconsideration of the Court's order compelling arbitration. On December 9, 2009, the Court entered separate orders denying Ozormoor's motion for reconsideration and granting T-Mobile's motion to dismiss. See Doc. Nos. 17, 18. Ozormoor appealed. The Court of Appeals for the Sixth Circuit affirmed, finding not only that Ozormoor's

claims are subject to arbitration, but also that dismissal of the complaint was appropriate. Ozormoor v. T-Mobile, No. 08-2596 (6th Cir. Dec. 3, 2009) (unpublished).

Ozormoor initiated arbitration proceedings on February 2, 2010. T-Mobile filed a motion for summary disposition before the arbitrator on the grounds that Ozormoor's claims were untimely based on the one-year statute of limitations in the Service Agreement. On April 28, 2010, the arbitrator granted T-Mobile's motion. The arbitrator found that Ozormoor's claims were time barred based on the one-year limitations provision. The arbitrator also found that because Ozormoor's tort claims arose out of his contract claims, they were subject to dismissal. Finally, the arbitrator also directed Ozormoor to pay $125.00 of the arbitrator's $250.00 fee.

On May 17, 2010, Ozormoor filed a motion to vacate in state court. The state court dismissed the motion for lack of jurisdiction.

On June 17, 2010, Ozormoor filed the instant motion to vacate.

### III. Legal Standard

The parties' rights in arbitration are governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. "The FAA expresses a presumption that arbitration awards will be confirmed." Nationwide Mutual Ins. Co. v. Home Ins. Co., 429 F.3d 640, 643 (6th Cir.2005).. "[C]ourts play only a limited role when asked to review the decision of an arbitrator." Tenn. Valley Authority v. Tenn. Valley Trades & Labor Council, 184 F.3d 510, 514 (6th Cir. 1999) (per curiam). "A Court's review of an arbitration award is one of the narrowest standards of judicial review in all of American jurisprudence." WayBakery v. Truck Drivers Local No. 164, 363 F.3d 590, 593 (6th Cir. 2004) (internal citations and quotations omitted); see also Fed. Dep't Stores, Inc. v. J.V.B. Industries, Inc., 894 F.2d

3

862, 866 (6th Cir.1 990) ("the role of courts in reviewing arbitration awards is extremely limited."). In accordance with 9 U.S.C. § 10(a), the Court may only vacate an arbitration award in the following instances:

> (1) where the award was procured by corruption, fraud, or other means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). In addition to the statutory grounds, courts have held that award may be vacated if it was made in "manifest disregard of the law." Jacada, Ltd. v. Int'l Mktg. Strategies, Inc., 401 F.3d 701, 712 (6th Cir.2005). Discussing the "manifest disregard" standard, the Sixth Circuit stated in Dawahare v. Spencer, 210 F.3d 666, 669 (6th Cir. 2000):

> An arbitration decision "must fly in the face of established legal precedent" for us to find manifest disregard of the law. [ Merrill Lynch, Pierce Fenner & Smith v. Jaros, 70 F.3d 418, 421 (6th Cir.1995) ] An arbitration panel acts with manifest disregard if "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle."
> Id. Thus, to find manifest disregard a court must find two things: the relevant law must be clearly defined and the arbitrator must have consciously chosen not to apply it. See M & C Corp. v. Erwin Behr GmbH & Co., 87 F.3d 844, 851 n. 3 (6th Cir.1996) (noting that if its review of an arbitral award were based on FAA standards, there was no manifest disregard since any mistake in applying the law was inadvertent and not based on a conscious decision to ignore the law). Arbitrators are not required to explain their decisions. If they choose not to do so, it is all but impossible to determine whether they acted with manifest disregard for the law. See [ Jaros, supra at 420].

As one district court put it, the Court cannot disturb an award unless "absolutely no rational means [can] be determined by which the Panel may have come to its decision.

4

If any such path to the Award may be forged, this Court must affirm the Panel's decision." Fitzgerald v. H & R Block Fin. Advisors, Inc., No. 08-10784, 2008 WL 2397636 at * 5 (E.D. Mich. June 11, 2008) (unpublished). "[E]ven errors in the interpretation and application of the law will not be enough to overturn an arbitration panel's decision." Id. "[E]ven a misapplication of well defined and explicit legal principles does not constitute manifest disregard." Jaros, 70 F.3d 418, 421 (6th Cir.1995).

IV.  Analysis

Ozormoor first argues, relying on § 10(a)(4), that the arbitrator's decision must be vacated because the arbitrator exceeded his authority.  He also argues that the arbitrator committed an manifest disregard for the law.[1]  Both grounds are addressed in turn.

As to whether the arbitrator exceeded his authority, it is well-established that "[t]he burden of proving that the arbitrators exceeded their authority is very great," Nationwide Mut. Ins. Co. v. Home Ins. Co., 330 F.3d 843, 846 (6th Cir. 2003).  "[C]ourts must accord an arbitrator's decision substantial deference because it is the arbitrator's construction of the agreement, not the court's construction, to which the parties have

---

[1]Ozormoor also argues that the arbitration should be vacated under MCR 3.602(J).  This argument is misguided because state law does not govern this dispute.  Rather, as the Service Agreement clearly states, "the Federal Arbitration Act and federal arbitration law govern arbitrations under the Agreement." Service Agreement ¶ 3.  See also Gordon Sel-Way, Inc. v. Spence Brothers, Inc., 438 Mich. 488, 496, 475 N.W.2d 704 (1991)(when dealing with arbitration provisions, "the parties' contract is the law of the case"); see also Papas v. Greektown Casino, L.L.C., No. 257156, 2006 WL 744112, *1 (Mich. Ct. App. March 23, 2006) (The FAA governs when a contract requires disputes to be "resolved by arbitration pursuant to the Federal Arbitration Act).

agreed." Beacon Journal Pub. Co. v. Akron Newspaper Guild, Local No. 7, 114 F.3d 596, 599 (6th Cir.1997). The terms of the contract define the powers of the arbitrator, and "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed a serious error does not suffice to overturn his decision." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). "[C]ourts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error." Id. (emphasis added). And "[i]f a court can find any line of argument that is legally plausible and supports the award then it must be confirmed." Jaros, 70 F.3d at 421.

Ozormoor has not met this heavy burden. Here, the Service Agreement grants the arbitrator broad powers. Under the Service Agreement, arbitration is mandatory for "any claim or dispute . . . related to or concerning the agreement, or [T-Mobile's] provision . . . of goods, services or units." And, the arbitrator is authorized to "award as much relief as a court having jurisdiction in the place of arbitration. . . . [including] summary judgment under applicable law." Service Agreement ¶ 3. Thus, the arbitrator was given the authority to interpret provisions of the Service Agreement and to dismiss Ozormoor's claims based on that interpretation.

Ozormoor, however, argues that the arbitrator exceeded that authority because the Service Agreement has an exception clause in Paragraph 25[2] of the Terms and

---

[2]Ozormoor cites Paragraph 22 of the Service Agreement which is part of the 2003 Service Agreement. However, the 2005 Service Agreement is controlling. In any event, Paragraph 22 of the 2003 Service Agreement is identical to Paragraph 25 of the 2005 Service Agreement.

6

Conditions which provides: "Except as otherwise stated in this Agreement, and unless prohibited by law, a claim or dispute must be brought within 1 year from the date the cause of action arises." Ozormoor's argument, however, amounts to asking the Court to review the arbitrator's interpretation of the limitations provision of the Service Agreement, which this Court cannot do. As the Supreme Court explained in <u>United Paperworkers Int'l v. Misco, Inc.</u>, 484 U.S. 29, 38 (1987):

> Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. . . . [T]he parties have authorized the arbitrator to give meaning to the language of the agreement, [as such] a court should not reject an award on the ground that the arbitrator misread the contract.

The arbitrator's decision was clearly based on his finding that the one-year provision applied. This is clearly within the scope of his authority. Moreover, the arbitrator's additional finding that Ozormoor's tort claims fell under his contract claims likewise draws its essence from the Service Agreement. In short, the arbitrator did not exceed his authority.

As to whether the arbitrator acted in manifest disregard of the law, Ozormoor has failed to show that the arbitrator consciously chose to disregard the law. The arbitrator's decision reads in full:

> I, THE UNDERSIGNED ARBITRATOR . . . hereby grants [T-Mobile's] Motion [for Summary Disposition] for the reason that Claimant has not filed his claims within one (1) year from the date of any cause of action that may have arisen as required by the Service Agreement. Further, the Arbitrator determines that as the tort claims arise out of and are premised on the breach of contract claims, they must be dismissed.

> Each party shall bear its own fees, expenses and legal fees.
>
> The administrative fees of the American Arbitration Association totaling $975.00 shall be borne as incurred and the compensation of the arbitrator totaling $250 shall be borne equally. Therefore, Claimant shall reimburse Respondent the sum of $125.00, representing that portion of said fees in excess of the apportioned costs previously incurred by Respondent.

While brief, the arbitrator found the one-year limitation period applied and that Ozormoor's claims, undisputedly brought well after that, were time barred as a result. While Ozormoor says that the shortened limitations period is "clearly unreasonable," this argument is unavailing. Indeed, Michigan courts have upheld contractual provisions that shorten limitations periods. In Rory v. Cont. Ins. Co., 473 Mich. 457, 470 (2005), the Michigan Supreme Court held that "an unambiguous contractual provision providing for a shortened period of limitations is to be enforced as written unless the provision would violate law or public policy." In light of Rory, the arbitrator's finding that the limitations provision was enforceable is consistent with Michigan law. See Rory 473 Mich. at 471-72 (the fact that a contractual provision shortens the limitations period to one-year does not render it against Michigan law or public policy).

Ozormoor argues that the arbitrator acted in manifest disregard of the law, citing Camelot Excavating Co., Inc. v. St. Paul Fire & Marine Ins. Co., 410 Mich 118 (1981). Ozormoor's reliance on Camelot is misplaced because the Michigan Supreme Court expressly overruled the Camelot test in Rory. Rory 473 Mich. at 470 ("To the degree that . . . Camelot and their progeny abrogate the unambiguous contractual terms on the basis of reasonableness determinations, they are overruled."). Because the arbitrator cannot possibly disregard law that is no longer good, Ozormoor's argument fails.

Ozormoor also says that the arbitrator manifestly disregarded a provision of the

Michigan Consumer Protection Act (MCPA), which requires any provision in a consumer contract in which the consumer waives a right or benefit to be clearly stated, when he dismissed Ozormoor's MCPA claims.[3] This argument, however, was rejected by the Michigan Court of Appeals in Dean v. Haman, No. 259120, 2006 WL 1330325 (Mich. Ct. App. May 16, 2006) (unpublished opinion). In Dean, at *3, the court of appeals, considering a six month statute of limitations, found that the "MCPA does not contain any prohibition against shortening its six-year period of limitations, and we will not read such a prohibition into the act." The court further found that a contractual limitations provision is clearly stated (in accordance with the MCPA) when it "appears in the same font size and style as the rest of the contract's terms" which is how the limitations provision of the Service Agreement appears. Id. Thus, it cannot be said that the arbitrator manifestly disregarded the law when a Michigan court enforced a contractually-based limitations provision nearly identical to the one at issue here.[4]

Ozormoor also argues that the arbitrator manifestly disregarded the principle of

---

[3]Ozormoor's argument is premised on M.C.L. § 445.903(1)(t), which states that it is unlawful to "[e]nter[] into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it."

[4]Ozormoor's other MCPA argument – that the arbitrator's decision prevented him from vindicating his MCPA claims – is misplaced. Had Ozormoor filed his Arbitration Demand in accordance with the Service Agreement, he would have had a full opportunity to argue his MCPA claims on the merits. Moreover, his reliance on Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc., 473 U.S. 614, 628 (1985) to support this argument is also improper because Ozormoor has not provided any authority (to this Court or in the underlying arbitration) to support his contention that Mitsubishi precludes private parties from contracting for a shortened period of limitations for statutory causes of action. Rather, case law suggests the contrary. See e.g., Dean v. Haman, supra.

9

collateral estoppel when it dismissed his claims. Ozormoor says T-Mobile is collaterally estopped from moving for summary disposition – for any reason – because when this Court compelled this matter to arbitration, it inherently ordered that Ozormoor was entitled to argue the merits of his claims regardless of whether any procedural issues prevented such a hearing. Ozormoor is mistaken. The Court's order enforcing the arbitration provision said nothing about the arguments T-Mobile could raise before the arbitrator and was in no way intended to indicate, nor did it indicate, that Ozormoor's claims should be heard on the merits. Put simply, the doctrine of collateral estoppel does not apply.

As noted above, the Service Agreement gave the arbitrator broad authority. The arbitrator's decision was not only consistent with the parties' Agreement, but also with Michigan law. See Nielsen v. Barnett, 440 Mich. 1 (1992)(Arbitrators have the authority to dismiss an arbitration demand if it is untimely).

Moreover, the arbitrator did not act in manifest disregard of the law when he dismissed Ozormoor's "tort claims [because they] arise out of and are premised on the breach of contract claims." This language from the arbitrator's decision confirms that he applied the well-known legal principle, a principle that Ozormoor himself admits applies, that for a tort claim arising in a contractual setting to be enforceable, it must be based on a duty separate and distinct from the contract. See Haley v. Allstate Ins. Co., 262 Mich. App. 571, 577 (2004). While Ozormoor disagrees with the arbitrator's conclusion that his tort claims are part of his contract claims, that is not grounds to vacate his decision. See Jaros at 421 (To show manifest disregard a party must show more than "a mere error in interpretation or application of the law.")

Finally, Ozormoor argues that the arbitrator acted in a manifest disregard of the Court's order when it found that the arbitrator's compensation (not including the administrative fees) was to be split equally so that each party is to be responsible for $125. Ozormoor's argument misinterprets the Court's ruling. The Court did not order T-Mobile to bear all of the costs associated with arbitration; rather, it found the cost-splitting requirement of the arbitration provision in the Service Agreement unconscionable and simply severed that requirement from the Agreement. The rest of the Service Agreement, which calls for arbitration by the AAA in accordance with the Wireless Industry Arbitration Rules, is still valid. Service Agreement ¶ 3. As such, the allocation of fees between Ozormoor and T-Mobile is controlled by Section C-8 of the Supplemental Procedures for Consumer-Related Disputes, attached as Exhibit D to T-Mobile's motion, which states that the consumer is responsible for one-half the arbitrator's fees up to a maximum of $125 for the arbitrator's compensation when, like here, a consumer's claim does not exceed $75,000. Because the arbitrator apportioned the fees in accordance with the relevant AAA rules, he did not act in a manifest disregard of the law.

## V. Conclusion

Overall, for the reasons set forth above, Ozormoor has not shown that the arbitrator exceeded his authority or acted in manifest disregard of the law. Accordingly,

the motion to vacate is DENIED.

    SO ORDERED.

                        S/Avern Cohn
                        AVERN COHN
                        UNITED STATES DISTRICT JUDGE

Dated: August 19, 2010

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 19, 2010, by electronic and/or ordinary mail.

                        S/Deborah R. Tofil
                        Relief Case Manager, (313) 234-5160